**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X
OFFICEMAX INCORPORATED,

                Plaintiff/Counterclaim Defendant,
                                       **MEMORANDUM OF**
       -against-                      **DECISION AND ORDER**
                                         12-CV-5075 (ADS) (ETB)
RICHARD CINOTTI,

                Defendant/Counterclaim Plaintiff.
-------------------------------------------------------------------X

**APPEARANCES:**

**Ogletree Deakins Nash Smoak & Steward PC**
*Attorneys for OfficeMax Incorporated*
1745 Broadway
Suite 2200
New York, NY 10019
      By:   Sharon P. Margello, Esq.
              Jennifer A. Rygiel-Boyd, Esq., Of Counsel

**Nixon Peabody LLP**
*Attorneys for Richard Cinotti*
50 Jericho Quadrangle
Suite 300
Jericho, NY 11753
      By:   James W. Weller, Esq.
             Kurt Michael Mullen, Esq.
              Matthew Thomas McLaughlin, Esq., Of Counsel

**SPATT, District Judge**

       On October 10, 2012, the Plaintiff Officemax Incorporated ("OMI") commenced this action against the Defendant Richard Cinotti ("Cinotti"), asserting claims for violations of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, and breach of his duty of loyalty. On November 15, 2012, Cinotti filed his Answer with several Counterclaims, including a claim for defamation. Presently before the Court is OMI's motion to dismiss Cinotti's defamation

counterclaim pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 12(b)(6). For the reasons that follow, OMI's motion is granted.

## I. FACTUAL BACKGROUND

Unless otherwise stated, the following facts are drawn from Cinotti's Answer/Counterclaim and construed in the light most favorable to Cinotti.

### A. The Underlying Action

In March 2006, Cinotti began working for OMI as an Account Executive and continued his employment until March 2010. (Compl., ¶ 5; Answer, ¶ 5.) According to OMI, as an Account Executive, Cinotti "develop[ed] new business with corporate and organizational customers by soliciting and selling office supplies and related services to customers, by establishing customer trust and goodwill, and by maintain relationships with key procurement and purchasing managers in order to maintain and develop [OMI's] customer relationships." (Compl., ¶ 6.) He was then rehired in July 2011 and was employed by OMI until the close of business on June 22, 2012. (Answer, ¶ 5.) Cinotti's duties included finding new customers for OMI. (Id. at ¶ 6.) During his employment, Cinotti was issued a laptop to use for work-related matters. (Id. at ¶ 7.)

OMI claims that Cinotti began working for W.B. Mason Co., Inc. ("W.B. Mason") on June 22, 2012 and, on the same day, uploaded files from his OMI-issued laptop to "yahoo mail." (Compl., ¶ 11.) OMI further claims that on June 25, 2012, Cinotti connected a flash drive to the laptop and erased his laptop's Internet history. (Id. at ¶ 12.) Finally, OMI alleges that on June 26, 2012, Cinotti again accessed "yahoo mail" from his laptop, printed something from his laptop, erased his laptop's Internet history and shipped his laptop back to OMI. (Id. at ¶ 13–14.)

According to OMI, as of June 22, 2012, Cinotti was not authorized to access the contents of the OMI issued laptop. (Id. at ¶ 15.)

Cinotti denies most of OMI's allegations, including the claim that June 22, 2012 was his first day of employment with W.B. Mason. (Answer, ¶ 11.) However, Cinotti admits that he connected a flash drive to his OMI-issued laptop at some point in time after his last day of employment with OMI and that at some further point in time he shipped his laptop back to OMI without the flash drive. (Id. at ¶¶ 12, 14.).

### **B. Cinotti's Defamation Counterclaim**

In August 2011, OMI entered into a Settlement Agreement and Release ("the Settlement Agreement") with W.B. Mason to resolve litigation that was pending between the two companies. (Countercl., ¶ 1.) As part of the Settlement Agreement, certain former OMI employees hired by W.B. Mason were prevented from contacting their former OMI customers for a certain period of time. (Id. at ¶ 2.)

As mentioned above, in or about June 2012, Cinotti left OMI and began working for W.B. Mason. (Id. at ¶ 3.) OMI directed Cinotti, as a condition of his employment, not to contact his former OMI customers. (Id. at ¶ 4.) Cinotti claims that at no point during his employment with W.B. Mason did he contact former customers that he serviced while employed by OMI. (Id. at ¶ 5.)

On or about September 10, 2012, OMI sent a letter to Cinotti's counsel ("the Letter") claiming that Cinotti violated the terms of the Settlement Agreement by contacting a former OMI customer. (Id. at ¶ 6; Rygiel-Boyd Cert., Exh. A.) In this regard, the Letter stated:

> [OMI] recently learned that [] Cinotti recently contact[ed] Mr. John Humphries at Telephonics in New York, clearly in an attempt to solicit business on behalf of W.B. Mason, away from [OMI]. The customer recently explained to [OMI] that [] Cinotti had

3

> contacted him and that he had decided to put out a request for proposal bids versus renewing its current business with [OMI] (which agreement [] Cinotti previously negotiated on behalf of [OMI]), and further commented that [OMI] would need to be pretty aggressive now that [Cinotti] was with one of [OMI's] competitors and knows [OMI's] pricing.

(Rygiel-Boyd Cert., Exh. A.)  The Letter concluded by directing Cinotti's counsel to "promptly provide [OMI] with an explanation concerning this matter so that [OMI] [could] better evaluate what has occurred, and that [] Cinotti and W.B. Mason engage in no further actions that would violate the terms of the Settlement Agreement[.]"  (Rygiel-Boyd Cert., Exh. A.)

Thereafter, on or about September 13, 2012, OMI forwarded a copy of the Letter to W.B. Mason's counsel in order to "provide[] notice concerning violations by [] Cinotti of the Settlement Agreement . . . that was entered into between [OMI] and W.B. Mason in August 2011."  (Countercl., ¶ 7; Rygiel-Boyd Cert., Exh. B.)  OMI again "request[ed] that [] Cinotti and W.B. Mason engage in no further actions that would violate the terms of the Settlement Agreement[.]"  (Rygiel-Boyd Cert., Exh. A.)

In its Complaint, OMI asserts no claims against Cinotti related to those allegations that it included in the Letter it sent to W.B. Mason.  In addition, it appears that OMI has not initiated any lawsuit against W.B. Mason concerning the violations alleged in the Letter.

## II. DISCUSSION

**A. Legal Standard on a Motion to Dismiss**

When considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), "'[t]he issue is not whether a [counterclaim] plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'"  Todd v. Exxon Corp., 275 F.3d 191, 198 (2d Cir. 2001) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974)).  As such, this Court "accept[s] all factual allegations in the [counterclaim] and draw[s]

4

all reasonable inferences in the [counterclaim] plaintiff's favor." ATSI Commc'n, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007). In addition, in its analysis, the Court may refer "to documents attached to the [counterclaim] complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in [a counterclaim plaintiff's] possession or of which [a counterclaim] plaintiff[] had knowledge and relied on in bringing suit." Brass v. Am. Film Tech., Inc., 987 F.2d 142, 150 (2d Cir. 1993); see also Karmilowicz v. Hartford Fin. Servs. Group, No. 11-3284-cv, 2012 U.S. App. LEXIS 18394, at *5–6 (2d Cir. Aug. 30, 2012).

"To survive a motion to dismiss, a [counterclaim, like a] complaint[,] must plead 'enough facts to state a claim to relief that is plausible on its face.'" Ruotolo v. City of New York, 514 F.3d 184, 188 (2d Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007)); see ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co., 553 F.3d 187, 196 (2d Cir. 2009). According to the Second Circuit, when applying this "plausibility standard," courts are "guided by '[t]wo working principles.'" Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009) (citing Ashcroft v. Iqbal, 566 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009)) (alteration in original). These two working principles are as follows:

> First, although "a court must accept as true all of the allegations contained in a [counterclaim] complaint," that "tenet" "is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." [Iqbal, 566 U.S. at 678]. "Second, only a [counterclaim] complaint that states a plausible claim for relief survives a motion to dismiss," and "[d]etermining whether a [counterclaim] complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." [Id., at 679.]

5

Mills, 572 F.3d at 72. Only if this Court is satisfied that the counterclaim "cannot state any set of facts that would entitle the [counterclaim] plaintiff to relief will it grant dismissal pursuant to Rule 12(b)(6)." Hertz Corp. v. City of N.Y., 1 F.3d 121, 125 (2d Cir. 1993).

**B. Choice of Law**

The Court notes that OMI is a Delaware-chartered corporation that maintains its principal place of business in Illinois. However, Cinotti is a New York citizen, "New York is the forum state, and the parties [have] proceeded . . . before [the Court] under the tacit agreement that New York law applies." Albert v. Loksen., 239 F.3d 256, 264 (2d Cir. 2001). As such, the Court "see[s] no reason . . . not to apply the law of New York" in the present case. Id. (citing Celle v. Filipino Reporter Enterprises Inc., 209 F.3d 163, 175 (2d Cir. 2000) ("No reason of policy warrants a departure from [the parties'] implied choice-of-law" during jury trial); Merrill Lynch Interfunding, Inc. v. Argenti, 155 F.3d 113, 121 n. 5 (2d Cir. 1998) ("[T]he parties both present arguments based on New York law, the law of the forum state. It is therefore appropriate for this Court to apply New York law.")).

**C. As to Cinotti's Defamation Counterclaim**

Cinotti alleges that the Letter sent from OMI to W.B. Mason contained statements about him that were defamatory. (Countercl. ¶¶ 10–12.) OMI counters that the Letter to W.B. Mason is protected by the "litigation privilege" and therefore does not constitute defamation. (Def. Mem., pg. 4.) The Court agrees with OMI and finds that the litigation privilege is applicable in this case.

6

"Defamation in word or print is cognizable in an action for libel." Rosenberg v. Metlife, Inc., 453 F.3d 122, 123 n.1 (2d Cir. 2006) (citing Celle v. Filipino Reporter Enters., 209 F.3d 163, 176 (2d Cir. 2000)). "Under New York [State] law, libel consists of five elements: (1) 'a written defamatory statement of fact concerning the plaintiff'; (2) 'publication to a third party'; (3) 'fault (either negligence or actual malice depending on the status of the libeled party)'"; (4) "falsity of the defamatory statement"; and (5) "special damages or per se actionability (defamatory on its face)." Id. (citing Celle, 209 F.3d at 176). "Damages will [] be presumed for statements that . . . would tend to cause injury to a person's profession or business." Geraci v. Probst, 15 N.Y.3d 336, 912 N.Y.S.2d 484 (2010); see also Sang Lan v. Aol Time Warner, Inc., 11 Civ. 2870 (LBS)(JCF), 2012 U.S. Dist. LEXIS 65307, at *6 (S.D.N.Y. May 9, 2012) ("A writing is libelous per se under New York [State] law 'if it . . . tends to disparage [him] in the way of [his] office, profession or trade.'") (quoting Bordoni v. New York Times Co., 400 F. Supp. 1223, 1225 (S.D.N.Y. 1975).

However, of relevance here, New York State law's "litigation privilege" provides that "[s]tatements made by parties, attorneys, and witnesses in the course of a judicial or quasi-judicial proceeding are absolutely privileged, notwithstanding the motive with which they are made, so long as they are material and pertinent to the issue to be resolved in the proceeding. Bisogno v. Borsa, 101 A.D.3d 780, 781, 954 N.Y.S.2d 896, 896 (2d Dep't 2012) (citing Kilkenny v. Law Off. of Cushner & Garvey, LLP, 76 A.D.3d 512, 513, 905 N.Y.S.2d 661, 662 (2d Dep't 2010)). In this regard, allegedly defamatory statements are protected if they "may possibly be pertinent" to a proceeding. Lacher v. Engel, 33 A.D.3d 10, 14, 817 N.Y.S.2d 37 , 41 (1st Dep't 2006) (quoting People ex rel. Bensky v. Warden, 258 N.Y. 55, 59, 179 N.E. 257, 259

7

(1932)). The litigation privilege is absolute and "has been applied not only to statements made in pleadings and in court, but also to statements made in . . . letters between attorneys and parties . . . [and] during offers of settlement by attorneys." Aequitron Med., Inc. v. Dyro, 999 F. Supp. 294, 298 (E.D.N.Y. 1998) (citing O'Brien v. Alexander, 898 F. Supp. 162, 171 (S.D.N.Y. 1995)).

In this case, the parties disagree as to whether the litigation privilege applies to the Letter that OMI first sent to Cinotti's counsel and then to W.B. Mason. Cinotti relies primarily on Rosen v. Brandes, 105 Misc. 2d 506, 432 N.Y.S.2d 597 (Sup. Ct. 1980), which is a decision of the Supreme Court of New York, Special Term, Nassau County, for the proposition that the privilege in New York does not extend to statements made prior to the commencement of litigation. In Rosen, the court cited to Kenny v. Cleary, 47 A.D.2d 531, 363 N.Y.S.2d 606 (2d Dep't 1975), and concluded that under the precedent of the New York State Appellate Division, Second Department ("Second Department"), statements made before the commencement of a judicial proceeding cannot be absolutely privileged. 432 N.Y.S.2d at 511. While the circumstances in Kenny are not entirely clear from the decision, it appears that while the Second Department declined to extend the litigation privilege to pre-proceeding statements made to individuals who were not parties to the subsequent proceeding and who could not help resolve the dispute between the parties. 47 A.D.2d at 532. However, the Second Department also determined that such statements could be protected by a qualified privilege, so long as the communications were on a subject that both parties to the communications shared an interest. Id.

Notwithstanding the decision in Kenny, in a more decisive and much more recent decision by the Appellate Division, First Department ("First Department"), the court found that "statements in [a] letter from attorneys to their client's opponent, concerning [the] client's claims against [the] opponent on which [a] suit was contemplated, were absolutely privileged." Sexter

8

& Warmflash, P.C. v. Margrabe, 38 A.D.3d 163, 175, 828 N.Y.S.2d 315, 325 (1st Dep't 2007) (citing Lieberman v. Hoffman, 239 A.D.2d 273, 273, 658 N.Y.S.2d 18, 19 (1st Dep't 1997)). These cases from the different departments can easily be reconciled. In Kenny, the statements were not pertinent because they were made to individuals that could not help resolve the dispute. 47 A.D.2d at 532. Conversely, in Lieberman, which the Sexter court relied upon, the statements were made to an individual that could help in the resolution of the dispute and, therefore, were privileged. 239 A.D.2d at 273. Thus, at most, Kenny stands for the proposition that statements made before the commencement of a judicial proceeding are not privileged if they are made to a third party that cannot help resolve the dispute.

In addition, in recent years the First Department and federal courts have consistently held that the litigation privilege extends to statements made before the commencement of litigation. See, e.g., Bernstein v. Seeman, 593 F. Supp. 2d 630, 636 (S.D.N.Y. 2009) (noting that the litigation privilege "attaches to every step of a judicial proceeding, not just the hearing and trial phase" when holding that statements contained in the defendants' submission to the EEOC and in defense counsel's letter to the plaintiff prior to the plaintiff's commencement of the litigation were protected under the litigation privilege) (quoting Weitz v. Wagner, CV-07-1106 (ERK)(ETB), 2008 U.S. Dist. LEXIS 61112, at *24 (E.D.N.Y. July 24, 2008), adopted by 2008 U.S. Dist. LEXIS 62729, at *1 (E.D.N.Y., Aug. 8, 2008)); Front, Inc. v. Khalil, 103 A.D.3d 481, 484, 960 N.Y.S.2d 79, 82 (1st Dep't 2013) ("[A]n absolute privilege attaches to the statements made by plaintiff's counsel in the April 2011 letters, because they were issued in the context of 'prospective litigation.'"); Vodopia v. Ziff-David Publishing Co., 243 A.D.2d 368, 368, 663 N.Y.S.2d 178, 179 (1st Dep't 1997) (holding "a letter written by opposing counsel and sent to [the] plaintiff and directly to [the] plaintiff's client during the course of negotiations to settle a

9

copyright lawsuit threated by [the] plaintiff's client" to be absolutely privileged since "the letter was written by defendants in an attempt to settle the claim by plaintiff's client, and its contents, which, in any event, primarily consist of non-actionable opinions, were relevant and pertinent to that claim").

Extending the privilege to pre-proceeding communications is also consistent with the underlying rationale behind the litigation privilege. In this regard, "[t]he complete immunity for such statements is predicated upon the public interest in the freedom of participants in litigation to 'speak with that free and open mind which the administration of justice demands.'" D'Annunzio v. Ayken, Inc., 876 F. Supp. 2d 211, 217 (E.D.N.Y. 2012) (quoting Youmans v. Smith, 153 N.Y. 214, 220, 47 N.E. 265, 268 (1897)). Similarly, lawyers, on behalf of their clients, should also have the freedom to speak to opposing counsel with a free and open mind prior to the commencement of litigation. Indeed, if a communication between lawyers about a possible violation of a settlement agreement was to be subject to a defamation action, the effect might well be to deter any attempts by lawyers to resolve such disputes before a lawsuit is filed. This would limit the conduct of counsel and imperil the rights of clients. Therefore, in the Court's view, justice will be properly administered if the "litigation privilege" extends to statements made before the commencement of litigation, so long as the statements are pertinent to resolving the dispute.

Here, the Letter OMI forwarded to W.B. Mason served to notify W.B. Mason that one of its employees, Cinotti, had possibly violated the terms of the Settlement Agreement that the two companies had entered into in order to resolve pending litigation between them. (Countercl. ¶ 7.) Therefore, the Letter was pertinent to the previous litigation between OMI and W.B. Mason, as it related to the Settlement Agreement that resulted from that litigation. Moreover, it is clear that

10

Cinotti's alleged violations of the Settlement Agreement could give rise to future litigation between OMI and W.B. Mason, even though such litigation has not yet been commenced. In addition, including Cinotti's name in the Letter to W.B. Mason was necessary to properly put W.B. Mason on notice of the alleged violation. Indeed, without naming Cinotti, W.B. Mason would not have had enough information to properly address the alleged violation. As such, the Court finds that the Letter is pertinent to the previous litigation between OMI and W.B. Mason and the resulting Settlement Agreement, as well as pertinent to possible future litigation between these parties, so that it is privileged. See Bisogno, 101 A.D.3d at 781 (citing Kilkenny, 76 A.D.3d at 513.

Nevertheless, Cinotti argues that the privilege does not apply because (1) OMI made the statements before commencing any litigation; (2) OMI "never brought litigation against anyone relating to the subject of the defamatory statements;" and (3) OMI wrote the Letter to W.B. Mason, "which is not a party to this litigation and has never been sued by [OMI] in connection with . . . Cinotti." (Pl. Opp., pg. 4.)

However, in the Court's view, Cinotti's arguments are without merit because they are predicated on the incorrect premise that the litigation privilege can only extend to the statements in the Letter if the statements were pertinent to the particular litigation before the Court. This Court has found no case that has so limited the litigation privilege. The fact that a defamatory statement is unrelated to one proceeding does not mean that it is unrelated to any other proceeding. As the Letter is related and pertinent to the past and possibly future litigation between OMI and W.B. Mason, it is protected by the litigation privilege.

Accordingly, because the Letter OMI sent to W.B. Mason is absolutely privileged, the Court finds that in his defamation counterclaim, Cinotti has failed to present "'enough facts to

state a claim to relief that is plausible on its face.'" Ruotolo v. City of New York, 514 F.3d 184, 188 (2d Cir. 2008) (quoting Twombly, 550 U.S. at 570). Therefore, Cinotti's defamation counterclaim is dismissed.

### III. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that OMI's motion to dismiss the Cinotti's defamation counterclaim pursuant to Fed. R. Civ. P. 12(b)(6) is GRANTED.

**SO ORDERED.**

Dated: Central Islip, New York
April 29, 2013

    _/s/ Arthur D. Spatt_
ARTHUR D. SPATT
United States District Judge